Herbert O'Hara, Respondent, v. City of Albany, Appellant.

Third Department, March 21, 1957.

*Neile F. Towner, Julian B. Erway* and *William R. Crotty* for appellant.

*Edward A. McMahon* and *Arthur J. Harvey* for respondent.

FOSTER, P. J. Appeal by the defendant City of Albany from a judgment of $5,149 entered against it in a negligence action upon the verdict of a jury after a trial in the Supreme Court, Albany County; from an order denying defendant's motion for a directed verdict; and from an order denying defendant's motion for a new trial.

Plaintiff claimed that he was struck by a police car, commonly called a prowl car, as he was crossing Second Street in the city of Albany at its intersection with Thornton Street. He was the only witness who testified to this alleged occurrence.

At the time of the trial he was 73 or 74 years of age (he was 70 at the time of the accident), and his testimony in some respects was vague and contradictory. He did not know whether or not there was a traffic signal at the intersection. At one point he testified that he saw the prowl car when it was a block away and before he started to cross the street. At another time he said he did not see the car when he started across the street, and did not observe it until he was eight feet from the curb on the opposite side. Although according to his own testimony the car approached him from the right it struck him on the left side of his body. He saw no one at the place of the accident

either before or after he was struck except the two policemen who were in the prowl car. They took him to the hospital.

De Marco, the policeman who drove the prowl car in question, denied that it struck plaintiff or was involved in any accident with him. He said that he was ordered by his superior to go from the station house, where he was awaiting a call to duty, to investigate a report that some man was down at the intersection of Thornton and Second Streets. When he arrived there, in company with another officer whose name was Bannon, he found the plaintiff lying on the sidewalk attended by a citizen whose name was Galvin and who resided in the neighborhood. When questioned by De Marco as to what had happened plaintiff said he had a weak spell.

Galvin testified that he took his dog out for a walk some time after 11:00 P.M. and when he arrived at the corner of Thornton and Second Streets he saw the plaintiff lying on the sidewalk. He asked the plaintiff what had happened and the latter said '' My leg gave out.'' Shortly thereafter the prowl car in question came around the corner with officers De Marco and Bannon. He was acquainted with Bannon but did not know De Marco. Bannon asked him what had happened and he told him what the plaintiff had said, and then the plaintiff himself made the statement again that his leg gave out. Thereafter the plaintiff was taken to the hospital in the prowl car by the officers at about 12 o'clock midnight.

De Marco was corroborated by his superior, Lieutenant Hoenig of the Albany City Police Department. The latter swore he was on duty near midnight at the time in question and received a telephone call from some person who did not identify himself that a man was lying on the sidewalk at the intersection of Thornton and Second Streets. He ordered De Marco and Bannon, who were in the reserve room in the station house, awaiting to go on duty to go to the intersection in question. At the time prowl car number 9, which was the car plaintiff claims struck him, was in front of the precinct station house.

One Reilly, who at the time was a radio dispatcher for the police department, testified that he dispatched the car in question to the scene. He kept a written log and the last entry thereon showed that at 11:53 P.M. car number 9 was dispatched to go to Thornton and Second Streets on account of a man down.

Bannon, the other officer who was in the police car at the time, did not testify. He was not employed by the city at the time of the trial and it was said that he could not be located.

From the foregoing it is obvious that in order to find for the plaintiff the jury had first to find that defendant's witnesses had

committed perjury, and that one of them had falsified an official record. The evidence afforded no middle ground or would sustain a conclusion less drastic. The evidence does not satisfy us that such a drastic conclusion should be drawn, but we are not the triers of the facts. In our judgment the verdict was decidedly against the weight of evidence but we cannot say as a matter of law that plaintiff's testimony was incredible. On this issue the cases cited by appellant do not apply to a negligence action such as we have here.

The judgment should be reversed and a new trial directed, with costs to abide the event. The order denying a motion for a directed verdict should be affirmed, without costs.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Judgment reversed, on the law and facts, and a new trial directed, with costs to abide the event.

Order denying motion for a directed verdict affirmed, without costs.